**2023 UT App 127**

## THE UTAH COURT OF APPEALS

GEORGE ROLLAN FELL, KELLY MOLYNEUX, AND BECKY CURTIS,
Appellants,
*v.*
ALCO CAPITAL GROUP LLC,
Appellee.

Opinion
No. 20210394-CA
Filed October 19, 2023

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 200901991

Daniel M. Baczynski,
Attorney for Appellants

Brett B. Larsen and Gregory M. Constantino,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUSTICE JILL M. POHLMAN[1] and
SENIOR JUDGE RUSSELL W. BENCH[2] concurred.

ORME, Judge:

¶1 George Rollan Fell, Kelly Molyneux, and Becky Curtis (collectively, Appellants) challenge the district court's grant of

---

1. Justice Jill M. Pohlman began her work on this case as a member of the Utah Court of Appeals. She became a member of the Utah Supreme Court thereafter and completed her work on this case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

2. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

summary judgment in favor of Alco Capital Group LLC (Alco). The court's summary judgment ruling resulted in dismissal of Appellants' suit, which was premised on their pivotal contention that Alco engaged in "deceptive" and "unconscionable" acts and practices in violation of the Utah Consumer Sales Practices Act (the UCSPA), *see generally* Utah Code Ann. §§ 13-11-1 to -23 (LexisNexis 2013 & Supp. 2022),[3] by pursuing debt collection while unlicensed under the Utah Collection Agency Act (the UCAA), *see generally id.* §§ 12-1-1 to -11.[4] Appellants contend that the district court erred in concluding that "in the absence of some affirmative misrepresentation, . . . simply being not registered under the UCAA is not a deceptive or unconscionable practice under the [UCSPA]." We affirm.

BACKGROUND[5]

¶2     Alco is a Wisconsin limited liability company with its principal office in Brookfield, Wisconsin. Alco engages in the

---

3. Because the applicable provisions of the UCSPA in effect at the relevant time do not materially differ from those currently in effect, we cite the current version of the code's UCSPA provisions for convenience. Except as stated in note 4, we do likewise with other provisions of the Utah Code.

4. With the exception of its final section, which authorizes creditors to recover collection fees in addition to other amounts owed by a debtor, the UCAA was recently repealed. *See Meneses v. Salander Enters. LLC*, 2023 UT App 117, ¶ 3 n.1. For convenience, we cite the version of the code's UCAA provisions that was in effect immediately prior to this repeal.

5. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

acquisition of "portfolios of bad debts from debtors all over the country, including residents of Utah." Alco's collection method primarily involves "outsourc[ing] those collection activities to third-party debt collectors in some instances or in this case to counsel to try to recover those debts through filing lawsuits in the given jurisdiction."

¶3    Alco purchased a portfolio of outstanding debts that included debts owed by Appellants. Between June 2017 and January 2018, Alco engaged local legal counsel and filed actions in the appropriate Utah district courts to collect those debts. In its complaints against Appellants, Alco asserted that it had the "same right to collect" as the prior debt holder and that Alco was thus "entitled to a judgment." Alco ultimately obtained judgments against Appellants, and after the entry of those judgments, Alco "sought to enforce the judgments via garnishment proceedings." In those cases, Appellants did not argue that Alco's collection efforts were barred on the ground that Alco was not licensed under the UCAA.

¶4    In March 2020, Appellants filed their complaint in this case (the Complaint), challenging Alco's alleged deceptive and unconscionable collection efforts. In the Complaint, Appellants' primary claim was that Alco's collection efforts violated the UCSPA. *See* Utah Code Ann. §§ 13-11-4, -5 (LexisNexis 2013 & Supp. 2022). The Complaint described Alco as a "collection agency, collection bureau, or collection office" that was required to register and file a bond pursuant to the UCAA prior to pursuing any collection effort action in Utah. *See id.* § 12-1-1 (2013).[6]

---

6. Section 1 of the UCAA provided,

> No person shall conduct a collection agency, collection bureau, or collection office in this state, or engage in this state in the business of soliciting the right to collect or receive payment for another of any

(continued…)

¶5    Appellants contended that when Alco initiated its collection actions against Appellants, it "did not disclose that it did not have the requisite license," which amounted to an active misrepresentation of "its ability to enforce its right to collect the debt." Appellants reasoned that "Alco's conduct in filing a debt collection lawsuit, affirmative representations in its filings regarding Alco's right to recovery, and material omissions regarding its unlicensed status, together constitute a misrepresentation of its licensure and bonding status" and constitute a "per se deceptive act for a supplier under the UCSPA." *See id.* §§ 13-11-4, -5 (2013 & Supp. 2022). Appellants further alleged that "Alco purposefully engaged in these activities knowingly and intentionally to harm consumers and gain an advantage over its competitors" and that it "knew or should have known" about the UCAA licensure requirements.

¶6    Relying on their primary claim, Appellants sought a "declaration on behalf of [Appellants] that since Alco was acting unlawfully as an unlicensed collection agency," it "did not have legal standing to obtain any judgment in Utah Courts against

---

account, bill, or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness, unless at the time of conducting the collection agency, collection bureau, collection office, or collection business, or of advertising or soliciting, that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.

Utah Code Ann. § 12-1-1 (LexisNexis 2013). Sections 2 and 3 of the UCAA provided that "[t]he bond shall be for the sum of $10,000, payable to the state of Utah" and "shall be for the term of one year from the date thereof, unless the Division of Corporations and Commercial Code and the person giving the same shall agree on a longer period." *Id.* §§ 12-1-2(1), -3.

[Appellants]" and that its existing judgments should be "declared (i) void and unenforceable and (ii) Alco should not be entitled to collect any sums on those judgments or debts related to [Appellants]." Appellants also asked that Alco "be ordered to disgorge all sums collected on [all] judgment amounts from [Appellants] that Alco obtained as a result" of the improper judgments and that Alco be "enjoined from attempting to collect any judgment amounts entered improperly against [Appellants] in its favor while it acted illegally as a collection agency without a license." Alternatively, Appellants sought "a declaration that . . . Alco is not entitled to the assistance of any Utah court to enforce the principal amount due under any judgment Alco obtained improperly." In addition to these requests for relief, Appellants asserted their entitlement to "statutory damages of $2,000 under the [UCSPA] for the harm caused by Alco's unlawful attempts to collect on a debt."

¶7      In addition to seeking a declaratory judgment against Alco for the alleged violation of the UCSPA, Appellants further alleged that Alco had been unjustly enriched, asserting that "Alco had an appreciation that it was not entitled to receive the benefits it was collecting . . . that flow[ed] from the void judgments it improperly obtained." On this claim, Appellants contended that Alco "engaged in deceptive and/or unconscionable acts in violation of the [UCSPA] and was thereby unjustly enriched under common law." In their final claim, Appellants alleged that Alco's pursuit of wage garnishments under the circumstances constituted intrusion upon seclusion.[7]

---

7. Appellants' claims depend on a pivotal determination concerning whether Alco's violation of the UCAA qualifies as conduct that would trigger civil liability under the UCSPA. Appellants' theory comprises something of a hub and spokes, where the UCSPA violation is the hub and the various civil liability theories form the spokes. If the hub fails, there is no need to further consider the other claims that stem from it. Alternatively, if we were to conclude that the UCAA violation

(continued…)

¶8 Following service of the Complaint, Alco removed the case to the United States District Court for the District of Utah. But within just a matter of weeks, the case was remanded back to Utah's Third District Court.[8]

¶9 In December 2020, Alco filed its motion for summary judgment pursuant to rule 56(a) of the Utah Rules of Civil Procedure seeking to dismiss the Complaint in its entirety. Alco sought summary judgment on the theory that "all of [Appellants'] claims are based entirely on Alco's alleged noncompliance with the UCAA's registration and bonding requirements" and because the UCAA "provides only for criminal penalties for noncompliance, . . . a violation of the UCAA cannot support a private right of action in the circumstances of this case."

¶10 The district court held a hearing on Alco's motion for summary judgment, during which Alco conceded that at no time prior to initiating the collection actions or its pursuit of garnishment proceedings against Appellants was it licensed with the Division of Corporations and Commercial Code (the Division). *See* Utah Code Ann. § 12-1-1 (LexisNexis 2013) (requiring a "person" to be "registered with [the Division] and [have] on file a good and sufficient bond" when engaging in collection activity). Alco acknowledged that "in theory there could be circumstances somewhere where a violation of the UCAA or this registration requirement could support a [UCSPA] claim if it was coupled with some other kind of wrongful conduct

---

was sufficient to trigger a violation of the UCSPA, we would then need to address each radiating claim. As will be explained, the hub of Appellants' theories fails, and so we have no need to consider the spokes.

8. It is unclear from the record why the case was remanded to the state district court so soon after being removed. Appellants indicate that Alco "erroneously removed" the case to federal court, and it appears that Alco stipulated to the remand.

other than just the sheer violation of the administrative requirements to register and post a bond." But, Alco argued,

> there's no evidence in the record in this case . . . that Alco made any misrepresentations about their registration or bonding status. You know there's not like a letter somewhere where [Alco] said they were registered or bonded and they really weren't. There's no evidence that they purposely concealed that fact from any of [Appellants] or any other debtors for that matter.

¶11 Alco further argued that "this violation in this case without something more cannot support those kind of claims, cannot support a private cause of action in and of itself without something more, without some other wrongful conduct beyond the violation itself." And Alco contended that if the court were to determine that a violation of the UCAA is sufficient to trigger liability under the UCSPA, the court would essentially be creating a private right of action under the UCAA where the Legislature had intentionally not provided for one, instead having prescribed only a criminal sanction for a violation. *See id.* § 12-1-6. Alco again insisted that "without some other showing, some other evidence of some other wrongful conduct, . . . these allegations here just can't support the private causes of action that [Appellants] have asserted in the case either under the [UCSPA] or on the common law theories."

¶12 In response, Appellants argued that the court should take notice of the analysis offered in some federal cases relating to violations of the UCAA, the UCSPA, and the federal Fair Debt Collection Practices Act (the FDCPA), *see* 15 U.S.C. §§ 1692 to 1692p. Appellants argued that "[i]f threats to commit an unlawful act are deceptive or unconscionable," as proscribed by the FDCPA, *see generally id.* § 1692f, "it has to also be considered that the unlawful act itself would be deceptive." But Appellants concede on appeal that the Complaint does not include a claim under the FDCPA. Instead, the Complaint's pivotal contention is

the alleged violations of the UCSPA by virtue of the lack of licensure under the UCAA.

¶13 In the Complaint, Appellants' principal theory is anchored to the allegation of Alco's "deceptive" and "unconscionable" acts or practices, proscribed by the UCSPA, by reason of Alco's lack of licensure. At the summary judgment hearing, Appellants noted that in this context the terms "deceptive" and "unconscionable" "are not really well tailored to exact definitions." Attempting first to provide meaning to the term "deceptive" by relying on the definition of the term as used in the criminal context, Appellants asserted that deceptive acts occur "when a person creates or confirms by words or conduct [an] impression of law or fact that is false that the actor does not believe to be true and it's likely to affect the judgment of another in a transaction." *See generally* Utah Code Ann. § 76-6-401(1)(a) (LexisNexis Supp. 2022). Appellants further asserted that deceptive acts also arise "when a person fails to correct the false impression of law or fact that the actor previously created or confirmed by words or conduct that is likely to affect the judgment of another and the actor does not now believe to be true." *See generally id.* § 76-6-401(1)(b). In this regard, Appellants asserted that Alco's "filing . . . to collect on a debt when they could not [legally] collect on the debt, the conduct itself is a representation, an impression of law or fact that they could collect on this when they really could not." Appellants additionally contended that even though Alco became licensed at some point after filing its debt collection actions against Appellants, it "made no subsequent attempts to repair a potentially deceptive representation."

¶14 Regarding their theory of unconscionability, Appellants briefly argued that an act is "unconscionable" if and when "you know something that's [oppressive] or unfairly surprises an innocent party." Appellants insisted that because "[t]he debt collection itself was prohibited under the UCAA," Alco's unlawful collection efforts were necessarily deceptive and unconscionable, even in the absence of any particular representations by Alco.

¶15 At the conclusion of the hearing, the district court ruled from the bench, later entering a written ruling. The court first concluded that under the terms of the UCAA, "Alco was required to be registered and . . . it violated that statute . . . by failing to be registered and to post a bond." The court then shifted its consideration to the pivotal element of the Complaint, namely whether a debt collector's violation of the UCAA for failure to be registered and to file a bond, which by the terms of that act triggers only a criminal sanction, also establishes civil liability under the UCSPA if the debt collector pursues a collection action even "in the absence of some affirmative misrepresentation."

¶16 The court stated that "it's clear there's no private right of action" for a violation of the UCAA[9] and that if Appellants' only claim was a UCAA violation, "that would be the end of the matter." But, the court noted, Appellants "have argued that . . . the pursuit of a lawsuit when [Alco was not] registered constitutes a deceptive act or practice under the [UCSPA]."

¶17 The court observed that "we don't have a Utah appellate case on point." Because of this, it referenced analogous federal jurisprudence, mentioning cases involving violations of the UCAA in connection with claims brought under both the FDCPA and the UCSPA. The court recognized that "the statutes get at slightly different conduct and that doesn't mean, again, a violation of the UCAA could not constitute a violation of the [UCSPA]." The court explained:

> [If] there were affirmative representations that there was registration and something similar, perhaps that could rise to the level, but when I look at 13-11-4 and I look at the types of conduct that's prohibited, . . . I think . . . we have a different provision that can be relied on to bring a violation of the UCAA

---

9. On appeal, Appellants do not contend that there is a private right of action under the UCAA.

because under the UCAA you have to be registered in order to file a lawsuit to collect on the debt[.]

But here in the absence of some affirmative misrepresentation . . . simply being not registered under the UCAA is not a deceptive or unconscionable practice under the [UCSPA] such that a violation would [form] the basis of a claim under that statute.

¶18 The court concluded that "[o]btaining judgments on accounts lawfully owing by the consumer sued and rightfully owned by Alco" and "[o]btaining and serving Writs of Garnishment while unregistered under the UCAA, without anything more, is insufficient to establish a 'deceptive act or practice by a supplier'" or an "'unconscionable act or practice by a supplier' under the UCSPA." Thus, the court ruled that Appellants "must argue more than a violation of the UCAA to have a claim under the UCSPA."

¶19 And because all of Appellants' "claims and demands for relief are based entirely on Alco's alleged failure to register with the [Division] and file a bond," the court granted Alco's motion for summary judgment and dismissed the Complaint in its entirety. The court explained that Appellants "may not attempt to shoehorn a violation of the UCAA, which only has criminal penalties and which does not provide a private right of action, into either a violation of the UCSPA or any other State law cause of action, including a cause of action for unjust enrichment or intrusion upon seclusion."

¶20 Appellants now appeal the court's decision.

ISSUE AND STANDARD OF REVIEW

¶21 Appellants challenge the district court's grant of summary judgment in favor of Alco, in particular the court's determination that a violation of the UCAA's licensing and bonding

requirements does not, without more, qualify as a deceptive or unconscionable act or practice under the UCSPA. Of crucial importance is whether the court erred in requiring some affirmative misrepresentation beyond merely pursuing collection efforts without proper licensure. Appellants argue that "[w]hether Alco engaged in deceptive collection or misrepresented its registration and bonding status are questions of fact which must be left for a jury." While that may be true in an appropriate case, there was "no genuine dispute as to any material fact" in this case about Alco's offending behavior. *See* Utah R. Civ. P. 56(a). The only deception or misrepresentation claimed was the deception or misrepresentation Appellants assert was implicit in Alco's filing collection actions without being registered or bonded.

¶22 "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Turley v. Childs*, 2022 UT App 85, ¶ 16, 515 P.3d 942 (quotation simplified). "In reviewing a summary judgment decision pursuant to Rule 56[(a)] of the Utah Rules of Civil Procedure, we consider whether the trial court correctly concluded that no genuine issue of material fact exists and whether it correctly applied the law." *Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, ¶ 4, 73 P.3d 362. And we make our "own decision on the correctness of summary judgment, reviewing the same paper record that was before the trial court to decide whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Bahr v. Imus*, 2011 UT 19, ¶ 17, 250 P.3d 56.

ANALYSIS

¶23 The district court noted the then-lack of Utah case law directly on point. This gap in our jurisprudence likely came about as the result of cases raising similar claims often being accompanied by a claimed violation of the FDCPA—the federal act regarded as a corollary to the UCSPA. *See Buhler v. BCG*

*Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 WL 888733, at *2–4 (D. Utah Feb. 24, 2020). Those cases are typically removed to federal court for consideration of the federal question arising under the FDCPA claim. The federal court consequently addresses the pendant UCSPA claim in the same decision. Yet, as correctly noted by the district court, the FDCPA and the UCSPA "get at slightly different conduct."[10] And in the case before us, the Complaint does not contain a claim under the FDCPA. We now turn to consider Appellants' theories and the relationship between the UCAA and the UCSPA, mindful that under the UCAA, our Legislature saw fit to impose criminal liability for debt collection entities that are not registered or bonded but did not see

---

10. As mentioned by the district court and considered at length by federal district court judge Kimball in *Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 WL 888733 (D. Utah Feb. 24, 2020), a violation of the UCAA may be sufficient to support a claim under the FDCPA, but a violation of the UCAA is not per se sufficient to support a claim under the UCSPA. *Id.* at *3–4. A key difference between the FDCPA and the UCSPA is that the FDCPA proscribes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). *Buhler* notes that "the FDCPA expressly prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken." 2020 WL 888733, at *3 (quotation simplified). Judge Kimball explained,

> [A] violation of the UCAA's registration provision may provide a basis for finding an FDCPA violation when accompanied by the filing of a lawsuit to collect debt. Such a conclusion does not transform a UCAA violation into a private right of action under the FDCPA, but rather the alleged UCAA violations form the essential elements to make out a Section 1692e(5) claim.

*Id.* at *4.

fit to impose additional penalties for a violation. And, as noted, the UCAA does not authorize a private right of action.[11]

¶24　Turning our attention to the decision before us, a court's grant of summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). In short, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotation simplified). *Cf. Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah 1997) ("Litigants must be able to present their cases fully to the court before judgment can be rendered against them unless it is obvious from the evidence before the court that the party opposing judgment can establish no right to recovery.") (quotation simplified).

¶25　Appellants' central claim is derived from the theory that Alco's filing of collection actions while in violation of the UCAA amounts to actionable violations under the UCSPA. Under the

---

11. Under the UCAA, "[a]ny person, member of a partnership, or officer of any association or corporation who fails to comply with any provision of this title is guilty of a class A misdemeanor." Utah Code Ann. § 12-1-6 (LexisNexis 2013). Our Legislature did not additionally impose a civil penalty for noncompliance, but it knows how to do so when so inclined. For example, under the Utah Construction Trades Licensing Act, our Legislature not only imposed licensing requirements but expressly imposed a meaningful civil sanction for noncompliance. *See id.* § 58-55-604 (Supp. 2022) ("A contractor . . . may not . . . commence or maintain any action in any court of the state for collection of compensation for performing any act for which a license is required by this chapter without alleging and proving that the licensed contractor . . . was appropriately licensed when the contract sued upon was entered into, and when the alleged cause of action arose.").

UCAA, debt collection entities were required to hold valid licensure with the Division. *See* Utah Code Ann. § 12-1-1 (LexisNexis 2013). The UCAA provided that a collection agency must be both registered and bonded to be licensed. *See id.* Alco conceded that it was in violation of the UCAA when it filed the collection actions against Appellants, which it also openly acknowledged exposed it to criminal prosecution under the UCAA. *See id.* § 12-1-6. Appellants insist that this violation of the UCAA—the filing of the collection actions while unlicensed—constitutes behavior that is both "deceptive" and "unconscionable" under the UCSPA. Before considering each of these two theories separately, we pause to consider the broader scope of the UCSPA.

¶26    By its terms, the UCSPA "shall be construed liberally to promote," among other things, the protection of "consumers from suppliers who commit deceptive and unconscionable sales practices." *Id.* § 13-11-2(2). While it is not obvious that a debt collector who commences collection actions is a "supplier" engaged in a sales practice, Appellants attempt to bolster their position by relying on the "substantive rules . . . adopted by the Director of the Division of Consumer Protection" for the purpose of "promot[ing]" the "purposes and policies" of the UCSPA. *See* Utah Admin. Code R152-11-1(A). Appellants cite rule 152-11-5(B)(5) of the Administrative Code, which states,

> It shall be a deceptive act or practice in connection with a consumer transaction involving [services not involving repairs, inspections, or other similar services] for a supplier to: . . . Misrepresent that the supplier has the particular license, bond, insurance, qualifications, or expertise that is related to the work to be performed.

¶27    Appellants contend that Alco's debt collection efforts while in violation of the UCAA are sufficient to trigger liability under the UCSPA, although they pay scant attention to the threshold questions regarding how a collection agency would qualify as a

"supplier" or how debt collection—as opposed to the extension of consumer credit—would qualify as a "consumer transaction." *See Sexton v. Poulsen & Skousen PC*, 372 F. Supp. 3d 1307, 1320 (D. Utah 2019); Utah Code Ann. § 13-11-3(2), (6) (LexisNexis 2013). That said, there is no real dispute between the parties concerning whether efforts to collect an unpaid consumer loan would qualify as a "consumer transaction" under the UCSPA. *See* Utah Code Ann. § 13-11-3(2). But less obvious is the question of whether a collection agency qualifies as a "supplier." The UCSPA provides that "'Supplier' means a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." *Id.* § 13-11-3(6).

¶28 In some cases, a party's status as a supplier is more obvious, such as when it engages in the sale of merchandise to consumers. But here, Alco is in the business of collecting debts it has purchased not from consumers but from lenders. Under the UCSPA's "expansive definition," a Utah federal district court judge has concluded that "a party does not have to supply a good or service to a consumer to qualify as a supplier." *Sexton*, 372 F. Supp. 3d at 1320. Instead, "[a] party that regularly enforces consumer transactions is also deemed to be a supplier" under the definitional scheme of the UCSPA. *Id.* Thus, entities "that regularly collect debts incurred from consumer transactions are suppliers because they enforce those transactions." *Id.* Here, Alco engaged in the act or practice of collecting outstanding debts. Alco seems to accept the conclusion reached in *Sexton*, and consistent with the parties' briefing, we assume, without deciding, that Alco may be regarded as a supplier for purposes of the UCSPA.

¶29 Appellants raise two similar yet distinct theories regarding Alco's alleged violations of the UCSPA. First, they contend that Alco's actions in suing them without being licensed under the UCAA qualify as deceptive acts or practices. Second, they assert that Alco's actions in suing them without being licensed under the UCAA qualify as unconscionable acts or practices. We now consider these distinct UCSPA theories—deception and unconscionability—in turn.

## I. Deceptive Act or Practice

¶30 First, we consider Appellants' theory that Alco's actions qualify as deceptive acts or practices. Under section 13-11-4 of the UCSPA, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally" commits any number of enumerated acts. *See* Utah Code Ann. § 13-11-4(2) (LexisNexis Supp. 2022). And any such act violates the UCSPA regardless of "whether it occurs before, during, or after" the relevant consumer transaction. *See id.* § 13-11-4(1).

¶31 The Complaint alleged that "Alco's conduct in filing a debt collection lawsuit, affirmative representations in its filings regarding Alco's right to recovery, and material omissions regarding its unlicensed status, together constitute a misrepresentation of its licensure and bonding status." Although none of the acts cataloged in section 13-11-4(2) of the UCSPA expressly implicate Appellants' theory in this case, *see id.* § 13-11-4(2)(a)–(z), Appellants rely on a regulation promulgated by the Director of the Division of Consumer Protection for the proposition that

> [i]t shall be a deceptive act or practice in connection with a consumer transaction involving [services other than repairs, inspections, or other similar services] to . . . [*m*]*isrepresent* that the supplier has the particular license, bond, insurance, qualifications, or expertise that is related to the work to be performed.

Utah Admin. Code R152-11-5(B)(5) (emphasis added).[12] Thus, under Appellants' theory, they must demonstrate that Alco

---

12. Section 13-11-8(2) of the UCSPA provides that "[t]he enforcing authority shall adopt substantive rules that prohibit with specificity acts or practices that violate Section 13-11-4 and appropriate procedural rules." Rule 152-11-1(A) of the Utah

(continued…)

knowingly or intentionally misrepresented its licensure. "The plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice." *See Martinez v. Best Buy Co.*, 2012 UT App 186, ¶ 4, 283 P.3d 521, *cert. denied*, 293 P.3d 376 (Utah 2012).

¶32    *Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 WL 888733 (D. Utah Feb. 24, 2020), is persuasive on this issue. In that case, Judge Kimball noted that "it may be a violation of the UCSPA if a debt collector affirmatively misrepresented its registration status or evidence is presented that an agency concealed its registration status with knowledge or intent to deceive a debtor," but "affirmative statements regarding . . . registration or bond status, or . . . intentionally or knowingly ignor[ing] the UCAA's registration requirements to mislead, deceive, or gain an advantage over debtors" are required for a UCSPA claim. *Id.* at *5. Thus, mere silence about its licensure, without showing the requisite intent to mislead, does not constitute a knowing or intentional misrepresentation.

¶33    Looking at this case through the lens of *Buhler*, it is undisputed that Alco owned Appellants' outstanding debts and that the debts were due and owing. It is further undisputed that Alco, as the valid debt owner, pursued collection actions against Appellants, received judgments for the outstanding debts, and attempted to collect on those judgments via garnishment actions—all while unlicensed under the UCAA. Concerning the collection actions against Appellants, it is not alleged in the Complaint or before the district court that Alco sent collection letters regarding the debts wherein it claimed to be properly licensed under the UCAA. Nor at any point in this litigation have Appellants alleged that Alco made any affirmative misrepresentations about its licensure. Instead, Appellants base their argument on the contention that Alco's UCAA violation, in

---

Administrative Code memorializes that "[t]hese substantive rules are adopted by the Director of the Division of Consumer Protection pursuant to [the UCSPA]."

connection with its filing of the collection actions, amounted to a knowing misrepresentation made by "material omission, where there exists a duty to speak." But they have not identified any evidence that Alco "concealed its registration status with knowledge or intent to deceive" Appellants. *See id.* And they have not met their burden on appeal to demonstrate the origin or extent of this claimed "duty to speak" on the part of Alco. *See* Utah R. App. P. 24(a)(8).

## II. Unconscionable Act or Practice

¶34 We next consider Appellants' theory regarding Alco's alleged unconscionable act or practice under the UCSPA. *See* Utah Code Ann. § 13-11-5 (LexisNexis 2013). Section 13-11-5 dictates, "The unconscionability of an act or practice is a question of law for the court" and "[i]n determining whether an act or practice is unconscionable, the court shall consider circumstances which the supplier knew or had reason to know." *Id.* § 13-11-5(2), (3). The question of unconscionability is a question of law because it "does not require proof of specific intent but can be found by considering circumstances which the supplier knew or had reason to know." *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1244 (D. Utah 2016) (quotation simplified). As stated in Black's Law Dictionary, unconscionability generally is the manifestation of "[e]xtreme unfairness." *Unconscionability*, Black's Law Dictionary (11th ed. 2019). Thus, to succeed on a claim alleging an unconscionable act or practice, a party's complaint may not merely allege the same conduct that is at issue in a claim for deceptive conduct—more is required. *See Chadwick v. Bonneville Billing & Collections, Inc.*, No. 1:20-CV-132-TS, 2021 WL 1140206, at *4 (D. Utah Mar. 25, 2021) (dismissing the plaintiff's claim because he "simply repackaged the allegedly deceptive conduct and called it unconscionable") (quotation simplified). And this is essentially what Appellants have done here.

¶35 The course of events culminating in this litigation began when Appellants entered into a debt collection agreement with the previous debt holder. It continued by Alco purchasing Appellants' debts from the prior holder. As previously noted,

Appellants do not dispute the validity of the debts, that the debts went unpaid, or the amounts due. After acquiring the debts, Alco pursued collection actions in the appropriate courts. Appellants argued that the hallmarks of unconscionability are unfair surprise and oppression. *See Resource Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985) ("[A] court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and of unfair surprise."). But the filing of a collection action concerning an outstanding debt does not unfairly surprise or oppress the indebted party. Appellants nonetheless insist that Alco's violation of the UCAA's registration and bonding requirements rendered Alco's collection actions necessarily unconscionable.

¶36    Again, we are not persuaded. Even though Alco was not in compliance with the UCAA's licensing requirements, its pursuit of otherwise appropriate collection actions does not obviously qualify as an unconscionable practice under the UCSPA.[13] As noted, Appellants bear the burden of persuasion on appeal, and they have not persuaded us that Alco's mere lack of licensure renders its otherwise lawful collection efforts an unconscionable practice under the UCSPA.

---

13. We addressed the idea of unconscionability regarding commercial business practices in the context of section 13-11-5 of the UCSPA in *Stokes v. TLCAS, LLC*, 2015 UT App 98, 348 P.3d 739, *cert. denied*, 362 P.3d 1255 (Utah 2015). There, we affirmed the district court's conclusion that the appellant had engaged in unconscionable business practices based on the district court's findings that the defendant had "forg[ed] the Application for Title and then submitt[ed] the forged document to the DMV in order to procure a title showing itself as a lienholder." *Id*. ¶ 21. Such egregious behavior is well beyond anything Appellants alleged that Alco had done here.

CONCLUSION

¶37 The district court correctly concluded that without some showing of an affirmative misrepresentation, Alco's violation of the UCAA did not constitute a violation of the UCSPA. Appellants have not demonstrated that silence about Alco's lack of licensure can be deemed a knowing or intentional misrepresentation under the UCSPA, or that its collection efforts in the absence of such licensure are unconscionable.[14]

¶38 Affirmed.[15]

———————

14. Another panel of this court recently reached much the same conclusion in another case raising many of the same issues. *See Meneses v. Salander Enters. LLC*, 2023 UT App 117.

15. Appellants' other claims, which did not receive the same attention in briefing and went largely unargued at oral argument, are wholly dependent on the UCSPA claim. Because the UCSPA claim fails, the other claims do not require further consideration. *See supra* note 7.